**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS PETROWSKI, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 10-0630 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

LANGTON & ALTER
by: Abraham S. Alter, Esq.
1600 Saint Georges Avenue, Suite 106
Rahway, New Jersey 07065

 *Attorney for Plaintiff,*

PAUL J. FISHMAN
United States Attorney for the District Court of New Jersey
by: Michelle L. Christ, Esq.
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, New York 10278

 *Attorney for Defendant.*

**DEBEVOISE, Senior District Judge**

Plaintiff, Thomas Petrowski, seeks review, pursuant to 42 U.S.C. 405(g) and 42 U.S.C. 1383(c)(3), of the determination of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's application for Disability Benefits under Title II or Title XVI of the Social Security Act. Plaintiff contends that substantial evidence exists in the administrative record to support a finding of disability and that there were numerous deficiencies in the Hearing decision.

## I.     BACKGROUND

On September 12, 2006, Plaintiff filed an application for supplemental security income ("SSI"), alleging disability beginning March 1, 2006. (R. at 52.) On January 31, 2007, the claim was denied initially and upon reconsideration on May 25, 2007. (R. at 41, 31.) On July 24, 2007, the Plaintiff filed a written request for hearing. (R. at 28.) On November 20, 2008, the Plaintiff appeared and testified at a hearing in Newark, New Jersey before administrative law judge ("ALJ") Gerald J. Ryan. (R. at 57.) On February 17, 2009, ALJ Dennis O'Leary (ALJ Ryan had retired a few months prior (R. at 5)) issued a decision that, in light of the medical evidence, Plaintiff did not have any medically determinable severe impairments and he had not been under a disability within the meaning of the Social Security Act since September 12, 2006, the date the application was filed. (R. at 9.) On April 8, 2009, Plaintiff submitted a request for review of the ALJ's denial. (R. at 4.) On December 11, 2009, the ALJ's decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

*i. Plaintiff's history and claims*

Plaintiff is a sixty-three year-old U.S. citizen who was previously employed in a bar as a part-time worker, on an as needed basis. (R. at 52, 56.) The highest level of education he has completed is the twelfth grade. (R. at 87.) Plaintiff lives by himself in an apartment. His daily routine generally includes waking up, eating breakfast, going to work, coming home, preparing a

2

light meal ,napping, watching television, having dinner, and going to bed. (R. at 89.) He prepares his own food, usually taking just a few minutes, and does most of his own housework including washing dishes, dusting, and doing laundry. His sister occasionally helps with washing the floor and cleaning the bathroom. (R. at 91.) Plaintiff does most of his own shopping , which takes about an hour two times a week. (R. at 92.) His hobbies include watching sports and reading the newspaper. (R. at 92.) Plaintiff described his job at the bar saying he set up the register for his shift, served customers drinks, and operated a lottery machine. (R. at 98.)

On September 12, 2006, Plaintiff applied for disability benefits complaining of numbness in the right hand and both heels, right knee pain, sciatica, and acid reflux. (R. at 52.) Plaintiff indicated his conditions affected lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing." (R. at 93.) Plaintiff reported being able to walk two to three blocks and that, if he needed a rest, he could usually resume walking within five to ten minutes. (R. at 94.)

*ii. ALJ Hearing*

On November 20, 2008, Plaintiff testified at a hearing before ALJ Gerald J. Ryan. Plaintiff testified he was unable to work, saying, "I have trouble standing on my feet for more than a couple of hours. I get pain. I have to sit. After about an hour and a half, two hours, I have pain in my right side and I just have to sit sometimes to relieve the pain . . . I have problems with my right knee, too, sometimes. (R. at 62.) He stated that this affects his ability to work because "if I have to lift anything or after a couple hours, I wind up sitting and I have people asking me what's wrong with you? . . . It goes away and it comes back." He said that if he has to work a full shift of six hours, at the end of the day, "I'm like beat."(R. at 62.) He has difficulty lifting a case of beer and wouldn't try to lift two at once. (R. at 65). During a six hour work period, Plaintiff

3

stands for "maybe half the time." (R. at 66.) Plaintiff testified he had been doing this type of work in a bar for about five or six years and that it was as a result of his pain in his right knee and right side that he has cut back his hours. (R. at 63, 69.)

When the ALJ asked Plaintiff if he had any difficulty with his hands or arms, Plaintiff responded, "I do with my right hand. I get numbness but it works itself out." (R. at 66.) Plaintiff testified that Motrin and Advil are the only medications he takes for his pain. (R. at 63-64, 67). The ALJ asked "[i]n what way do they help?" to which Plaintiff said, "It just seems to ease, the pain goes, especially with the Motrin." (R. at 67.) He also uses a cane sometimes, that wasn't prescribed by a doctor, which seems to ease the pain. (R. at 67.)

The last time Plaintiff saw a doctor was about a year and a half before the hearing. He reportedly saw the doctor for the pain in his hip and knee. (R. at 67.) Prior to that visit it had been many years since Plaintiff had seen a medical care provider. (R. at 68.) At the conclusion of the hearing, the ALJ recommended that Plaintiff be sent out for an examination. (R. at 71.)

*iii. Medical Evidence*

On December 27, 2006, approximately two years before the ALJ hearing, Dr. Samuel Wilchfort, a social security doctor, examined Plaintiff. The doctor noted that Plaintiff had a positive history for sciatic pain, that he complained of unmoving pain in the right buttock, and complained of some numbness in his right hand but had no history of carpal tunnel syndrome or cervical spine injury. (R. at 125.) Dr. Wilchfort also noted that Plaintiff used a cane, that was not prescribed, to help with the pain in his right buttock area and support his right knee. *Id.* Plaintiff reported taking Advil or Aleve (or sometimes changing his position) to alleviate the pain in his buttock area. *Id.*

Dr. Wilchfort reported that Plaintiff had twenty/twenty-five vision in both eyes when corrected. His blood pressure was 150/100. His reflexes, muscle strength, and range of motion in his hands, wrists, elbows, and shoulders were all normal. In his lower extremities, the flexion of his hips, knees, and ankles were all normal. His straight leg raising test was negative at about fifty degrees bilaterally. He could bend over to ninety degrees. Plaintiff did display some difficulty with toe walking, heel walking, and squatting. All other reported results were normal. (R. at 126.)

In his summary, Dr. Wilchfort indicated that Plaintiff had probable hypertension, suggested by his blood pressure results, which the doctor noted should be repeated and followed up on. Plaintiff had pain in the right buttock. The doctor noted that Plaintiff "says its sciatica," but that he had "not really seen a physician." Dr. Wilchfort suggested X-rays of the LS-spine would be helpful. The doctor also noted some reported numbness in the hands, but normal pinprick sensation, and concluded that Plaintiff "may have carpal tunnel syndrome." (R. at 126.)

On December 27, 2006, Plaintiff underwent an X-ray of his right knee. The X-ray revealed no evidence of fracture or articular abnormality. The report stated there was a "tiny spur at the insertion of the quadriceps tendon" but that there were no loose bodies or synovial effusions. (R. at 131.)

On January 31, 2007, the SSA issued a decision that Plaintiff was not disabled and did not qualify for SSI. They based this decision on findings from the December, 27, 2006, Hudson County Internal Medicine Consultative Exam (performed by Dr. Wilchfort) and Radiology Consultative Exam. The SSA determined that Plaintiff's condition did not keep him from working based on his medical information (the physical exam and test results were essentially normal), age, education, training, and work experience. (R. at 41.)

On May 10, 2007, Plaintiff requested reconsideration stating, "My condition is severe and causes me a great deal of pain. My condition is disabling." (R. at 40.) On May 25, 2007, the Social Security Administration issued a reconsideration of Plaintiff's disability. Disability Examiner, Maritza Negron, and Dr. Harvey Silver reported that Plaintiff does "have pain. However, it does not limit [his] ability to move about and use [his] limbs." (R. at 31.) They further concluded his condition should not affect his ability to work, nor did he have any other condition that would affect his ability to work. (R. at 31.)

On December 29, 2008, subsequent to the ALJ hearing, Dr. Marc Weber examined the Plaintiff. Plaintiff complained of progressively worse pain in the right hip that did not stem from any associated trauma. He also reported occasional lower back pain but denied that it radiated into the lower extremities. Plaintiff claimed he was not able to stand for more than fifteen minutes and that the pain improved when he sat down. Plaintiff said he had pain in his right knee, primarily when he kneeled on it, and that his right knee had a "tendency to give out." He took over-the-counter pain medication a few times a day. (R. at 138.)

Dr. Weber noted that Plaintiff appeared comfortable during the examination; that there was no tenderness upon palpitation of the right hip, buttocks, or right knee; and that there was no joint swelling or instability. Plaintiff's muscle strength in both upper extremities was five/five and his muscle strength in his lower extremities was five/five, except for his right hip which was four+/five. His sensation was intact to light touch and pinprick in all four extremities. His range of motion in the cervical spine, lumbar spine, and both upper extremities was normal. His straight leg raise test was negative bilaterally. Plaintiff could fully extend his hands, make fists, and oppose his fingers. He was able to separate papers as well as lift and replace a pin on the table. He was able to stand on his heals and toes and to squat. He was able to ascend and descend

the table himself and put on his own shoes. However, his gait pattern was antalgic on the right. Dr. Weber concluded that Plaintiff had chronic right hip pain and apparent degenerative joint disease. He also had chronic right knee pain with a history of spur at the quadriceps insertion. (R. at 139.)

In his report on Plaintiff's ability to do work-related activities, Dr. Weber indicated that Plaintiff could frequently lift up to fifty pounds and could occasionally lift up to 100 pounds (but could never carry over fifty pounds). Plaintiff could sit and stand for fifteen minutes each and sit for eight hours without interruption. Within an eight hour workday, Plaintiff could sit for a total of eight hours, stand for two hours, and walk for two hours. Plaintiff did not require the use of a cane to walk. (R. at 141.) Plaintiff could reach, handle, finger, feel, and push/pull with both hands continuously. He could also operate foot controls continuously with his left foot but only occasionally with his right foot. (R. at 142.) Plaintiff could occasionally climbs stairs and ramps and stoop but could never climb ladders or scaffolds, balance, kneel, crouch, or crawl. (R. at 143.) Plaintiff could never tolerate exposure to unprotected heights. He could occasionally tolerate exposure to moving mechanical parts and operating a motor vehicle. He could continuously tolerate exposure to humidity and wetness, extreme cold, extreme heat, and vibrations. (R. at 144.)

Dr. Weber also indicated that of a list of activities (including the individual's ability to perform activities like shopping, his ability to use standard public transportation, and his ability to care for personal hygiene), Plaintiff was able to perform all of them. Dr. Weber indicated that he expected any limitation noted in his report to have lasted, or to be expected to last, twelve consecutive months. (R. at 145.)

A December 29, 2008 X-ray of Plaintiff's right knee revealed normal findings. There was no evidence of fracture or dislocation and the articular surfaces appeared intact. The regional soft tissues were also unremarkable. (R. at 148) A hip X-ray from the same day also revealed normal findings. There was no sign of fracture, the hip joint was preserved and the femoral head was normal. The sacroiliac joints were also symmetrical. (R. at 148.)

## II.  DISCUSSION

Pursuant to 42 U.S.C § 405(g) and 42 U.S.C. §1383(c), Plaintiff seeks reversal of the Commissioner's decision denying Plaintiff disability insurance benefits or in the alternative seeks remand of the ALJ's decision. In support of his petition, Plaintiff contends that there is substantial evidence in the administrative record to support a finding of disability because (i) Plaintiff suffers a severe impairment according to the Commissioner's own doctors and (ii) as defined by law.

**A. Standard of Review**

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000). A district court's review of the Commissioner's factual findings, however, is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999) ( "A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere

8

scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

**B. Determination of Disability**

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity*. The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)( i ). Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment*. If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments*. If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work*. If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir.2000). If the ALJ finds that the individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work*. If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and

work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)( v ). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step. At the fifth step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

**C. The Commissioner's Findings and Conclusions**

In this case, the Commissioner applied the five step analysis and concluded at the first step that Plaintiff had not engaged in substantial gainful activity since September 12, 2006, the application date. Though Plaintiff works, his annual earnings of between $2,700.00 and $3,000 do not constitute substantial gainful activity. (R. at 11.)

At Step Two, the Commissioner found there was no medical evidence or laboratory finding to substantiate the existence of a medically determinable impairment. (R. at 11). The ALJ stated that despite Plaintiff's complaints, "there [was] no objective evidence of any specific pathology." ( R. at 12.) While, admittedly, there is a low threshold to establish a severe impairment at Step Two, the ALJ is correct in his conclusion that the Plaintiff's complaints and

medical evidence have not met the threshold. Viewing the evidence in the light most favorable to the Plaintiff, the medical evidence supports the ALJ's finding that there is no medical impairment on which disability could be based.

According to 20 CFR §416.920(c), "[y]ou must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." An impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). Despite Plaintiff's complaints of hip and knee pain, the ALJ correctly asserted that there are no medical findings that indicate impairment. Though a 2006 X-ray revealed a "tiny" spur in his right knee, a 2008 x-ray of the same knee was normal with no evidence of a spur, tiny or otherwise. (R. at 131, 148) Furthermore, a January 19, 2007 report subsequent to the examination and X-ray (revealing a tiny spur) stated, "physical examination is essentially normal, as are labs. X-ray of the right knee show[s] no significant pathology." (R. at 133.) A 2008 X-ray of Plaintiff's hip likewise revealed no abnormalities (R. at 148) and, coupled with his full range of motion in his back and lower extremities (R. at 139), supports the ALJ's conclusion that the Plaintiff's physical ability to do basic work activities is not limited and thus he is not disabled.

In his opinion, the ALJ went through each of Plaintiff's complaints and evaluated the medical record to determine whether there was evidence of an impairment that might produce such a symptom. For each complaint- acid reflux, numbness in his right hand and both heels, and chronic hip and knee pain- the ALJ accurately noted the lack of any objective evidence of an impairment producing such a symptom. Plaintiff's arguments supporting a finding of disability

12

are not reflective of the medical record, while his own assertions about the law and the determination of a severe impairment only support the ALJ's conclusion.

*i. Plaintiff's use of the medical record*

Plaintiff's brief relies heavily on Dr. Weber's December 29, 2008 report. However, Plaintiff's reliance is, from the beginning, questionable. Plaintiff states that Dr. Weber found Plaintiff had "chronic right knee pain with a spur at the quadriceps insertion." Pl. Br. at 13. However, Dr. Weber's report actually says, "X-rays dated January 8, 2007 were reported as a tiny spur at the insertion of the quadriceps tendon." (R. at 138.) He did not indicate that Plaintiff still had this spur and, as a December 29, 2008 X-ray revealed, Plaintiff did not. (R. at 148.)

The Plaintiff's brief also suggests that Dr. Weber's "judgment" was that Plaintiff was disabled, yet this finding appears nowhere in his report. Pl. Br. at 13. Even if the Court were to accept that Dr. Weber found Plaintiff to be disabled, despite his mostly normal findings, such a conclusion cannot be heeded absent any corroborative medical findings. Dr. Weber reported that Plaintiff had no joint swelling or instability, that his muscle strength was five/five for all of his extremities (he was after all able to lift up to fifty pounds regularly and up to 100 pounds occasionally) except his right hip flexion that was four+/ five. He also responded to sensation and had normal reflexes. Finally, the doctor found that Plaintiff had full range of motion in his cervical spine, lumbar spine, and both upper extremities, as well as a negative leg raise test. (R. at 139.)

Plaintiff further relies on errant references to Dr. Wilchfort's report as well. He states that a consultative examination in 2007 found that Plaintiff "could not squat, needed a cane for ambulation, suffered from sciatica and probably suffered from both carpal tunnel syndrome and hypertension." Pl. Br. at 14. The only one of those "findings" that is an accurate statement of the

13

examiner's report is that Plaintiff had "[p]robable hypertension," which should be "followed up on." (R. at 126.) As to the squatting, the doctor noted in his report: "toe walking, heel walking a little difficult for him; squatting also difficult for him." Difficulty suggests, not an inability, but that Plaintiff can in fact squat, although with difficulty. Dr. Weber does not say that Plaintiff needed a cane; he says, Plaintiff "is using a cane because of the pain," which was notably not prescribed. The Plaintiff did not bring a cane to his ALJ hearing (R. at 67) and his full range of motion, that Dr. Weber noted in the lower extremities including flexion of the hips, knees, and ankles (R. at 125, 126), makes it unlikely that the cane was needed. Likewise the doctor did not say the Plaintiff had sciatica but that "[h]e says it [the pain in his right buttock] is sciatica." Finally, addressing the numbness in Plaintiff's hand (despite noting that he has normal pinprick sensation), Dr. Wilchfort said "[h]e may have carpal tunnel syndrome." (R. at 126.)

Looking beyond the Plaintiff's account of the medical evidence to the record itself, the Court finds there is ample support of the ALJ's conclusion that Plaintiff did not suffer from an identifiable medical impairment.

*ii. Plaintiff's use of legal standards*

Plaintiff spends the last nine pages of his brief with barely a mention of his alleged impairments (let alone a single citation to the record). His legal arguments, however, only further support the ALJ's decision that the Plaintiff is not disabled.

Plaintiff refers to caselaw in which the Supreme Court held that the severity requirement was a "*de minimis*" test, requiring Plaintiff to show that his impairment is not so slight that it could not interfere with the ability to work. Pl. Br. at 16. Here, the Plaintiff has not shown that his impairment would interfere with his ability to work and thus, under the Plaintiff's own

14

argument he would not meet the severity requirement. Plaintiff's brief includes a citation from 20 C.F.R. §404.1521 which states

> An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include physical functions such as walking, standing, sitting, lifting, pushing, pushing, reaching, carrying or handling."

Again, there is no showing that Plaintiff's ability to do basic work activities is significantly limited and, in fact, the medical evidence supports the opposite. In his December 29, 2008 report, Dr. Weber indicated that plaintiff could do reaching (overhead), reaching (all other), handling, fingering, feeling, and push/pull, with both hands, continuously. For the entire workday, Dr. Weber indicated that Plaintiff could sit for eight hours, stand for two hours, and walk for two hours.

Plaintiff then relies on Social Security Ruling 96-3p to argue that "functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities." Doing so requires "a careful evaluation of the medical findings that describe the impairment(s)," and Plaintiff argues if there are symptoms present which cause more than a minimal effect on basic work activities, determination must proceed to the next step.Pl. Br. at 18. Again, the Plaintiff does not meet the tests he lays out. First, it is unlikely there are any actual medical impairments, considering the normal findings of multiple doctors and tests. (R. at 125-126, 131,138-145, 148) Second, even if there were a medical impairment or only symptoms, it is not clear either would cause more than a minimal effect on Plaintiff's basic work activities (Plaintiff had full range of motion, could occasionally lift up to 100 pounds, and only took over the counter medication to alleviate the pain). (R. at 139, 140, 125.)

15

Finally, Plaintiff makes an argument that using the vocational rules, the Plaintiff would be deemed disabled. The Plaintiff asserts, "it is very important for the Court to remember that on the date that plaintiff's benefits were denied by ALJ O'Leary he was 60 years of age with past relevant work as unskilled medium to heavy work activity," allegedly supporting a finding of his disability. Pl. Br. at 22. However, because the ALJ decided there was not enough evidence to proceed past Step Two, (the Plaintiff having failed to prove a severe impairment), this argument is unavailing. To allow such reasoning would undermine the sequential, five step analysis. In Bowen v. Yuckert, 482 U.S. 137, 148 (1987), the Court wrote, "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits. In such a case, there is no reason for the Secretary to consider the claimant's age, education, and work experience." The opinion highlights the "predominant importance of medical factors in the disability determination." *Id.* Furthermore, in an earlier citation of SSR 96-3p, about determining the severity of an impairment at Step Two, Plaintiff notably omitted a sentence. The missing sentence reads, "[t]he vocational factors of age, education, and work experience are not considered at this step of the process."

Plaintiff cites Newell v. Commissioner, 347 F.3d 541, 546 (D.N.J. 2003), saying, "[t]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." Pl. Br. at 19. This is precisely the sort of groundless claim that Step Two was designed to eliminate.

### III. CONCLUSION

The Court finds unpersuasive the Plaintiff's contention that at Step Two there was substantial evidence contradicting the ALJ's holding that Plaintiff did not suffer a severe impairment. For the foregoing reason, the Commissioner's determination that Plaintiff was not disabled will be upheld.

The Court will enter an order implementing this opinion.

                                                    s/ Dickinson R. Debevoise
                                                    DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June _3_, 2011